UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT ASHLAND

CIVIL ACTION NO. 0:12-52-WOB-CJS

BRANDY LEIGH SEYMOUR				PLAINTIFF

v.			REPORT AND RECOMMENDATION

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY			DEFENDANT

\* \* \* \* \* \* \* \* \* \*

Plaintiff Brandy Leigh Seymour brings this action under 42 U.S.C. § 405(g) challenging Defendant Commissioner's final decision denying her application for benefits under the Social Security Act. This matter has been referred to the undersigned for preparation of a Report and Recommendation under 28 U.S.C. § 636(b)(1)(B). (R. 3). At issue is whether the Administrative Law Judge (ALJ) erred in finding Plaintiff "not disabled" and, therefore, not entitled to benefits. As explained below, the ALJ's decision was supported by substantial evidence. It is therefore **recommended** that Plaintiff's Motion for Summary Judgment (R. 14) be **denied** and the Commissioner's Motion for Summary Judgment (R. 15) be **granted**.

I.   STANDARD OF REVIEW AND THE ADMINISTRATIVE PROCESS

In reviewing the decision of an ALJ in social security cases, the only issues before the reviewing court are whether the ALJ applied the correct legal standards and whether the decision is supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009). The findings of the Commissioner are not

subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. *Blakley*, 581 F.3d at 406. "The substantial-evidence standard . . . presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Id*. (citing *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Thus, even if the evidence could also support another conclusion, the decision of an ALJ must stand if the evidence could reasonably support the conclusion reached. *Id.* (citing *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

In this case, Plaintiff must establish that she is disabled within the meaning of the Social Security Act in order to qualify for benefits. 42 U.S.C. § 423(a)(1). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Social Security Act requires the Commissioner to follow a five-step process when making a determination on a claim of disability. *Vance v. Comm'r of Soc. Sec.*, 260 F. App'x 801, 803-04 (6th Cir. 2008) (citing *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990)); *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). First, a claimant must demonstrate that she is not currently engaged in "substantial gainful activity." *Vance*, 260 F. App'x at 803 (citing 20 C.F.R. §§ 404.1520(b), 416.920(b)). Second, if the claimant is not engaged in substantial gainful activity, she must demonstrate that she suffers from a severe impairment. *Id*. at 803-04. "A 'severe impairment' is one which 'significantly limits . . . physical or mental ability to do basic work activities.'" *Id*. at 804 (citing 20 C.F.R. §§ 404.1520(c), 416.920(c)). Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least

twelve months, and the impairment meets or equals a listed impairment located at 20 C.F.R. pt. 404, subpt. P, app'x 1, then the claimant is presumed disabled regardless of age, education or work experience. *Id*. (citing 20 C.F.R. §§ 404.1520(d), 416.920(d)). Fourth, the claimant is not disabled if her impairment(s) does not prevent her from doing her past relevant work. *Id*. Lastly, even if the claimant cannot perform her past relevant work, she is not disabled if she can perform other work which exists in the national economy. *Id.* (citing *Abbott*, 905 F.2d at 923). Throughout this process, the claimant carries the overall burden of establishing that she is disabled, but the Commissioner bears the burden of establishing that the claimant can perform other work existing in the national economy. *Id*. (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004)).

## II.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff's alleged disability began on January 1, 2007, when she was twenty-eight years old. (Administrative Record (A.R.) 35). Plaintiff has some college education and has been employed as a cigarette outlet manager, home health aide, nursing assistant, and delivery driver. (*Id.*). Plaintiff claims that she is legally disabled as a result of diabetes, obesity, neuropathy, depression, anxiety, back pain, chest pain, fatigue, dizziness, headaches, and hypertension. (A.R. 81).

Plaintiff filed an application for disability insurance benefits, as well as an application for supplemental security income, on April 24, 2009. (A.R. 28). The Commissioner denied these applications on September 2, 2009, and again upon reconsideration on November 29, 2009. (*Id.*). Plaintiff then filed a written request for a hearing on January 6, 2010, under 20 C.F.R. § 404.929 and § 416.1429, and a hearing before an ALJ was held on August 6, 2010. (*Id.*). Plaintiff was represented by counsel at this proceeding. (A.R. 46).

The ALJ used a five-step sequential process to determine that Plaintiff was not disabled. (A.R. 29-37). At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful employment activity since January 1, 2007—the alleged onset date of her disability. (*Id.* at 30). The ALJ noted that while Plaintiff worked after that date, this work was part of a brief, unsuccessful work attempt that was curtailed by her medical condition.[1] (*Id.*). At step two, the ALJ determined that Plaintiff had the severe impairments of sleep apnea, low back difficulty, obesity, depression and panic disorder, under 20 C.F.R. § 404.1520(c) and § 416.920(c). (*Id.* at 30-31). As part of this analysis, the ALJ considered Plaintiff's alleged disability due to diabetes, neuropathy, high blood pressure and migraines, but determined that these were not severe impairments. (*Id.* at 31). At step three, the ALJ stated that Plaintiff did not have "an impairment or combination of impairments that meets or medically equals one of the listed impairments" under the applicable Federal Regulation. At step four, the ALJ determined that Plaintiff had the residual functioning capacity (RFC) to perform medium work as described in 20 C.F.R. § 404.1567(c) and § 416.967(c). (A.R. 35). The ALJ heard testimony from an impartial vocational expert (VE), Leah P. Salyers, who stated that Plaintiff could work as a delivery driver—a position which the ALJ classified as "light exertion and unskilled as generally performed." (*Id.* at 35, 64). Since the ALJ had determined in the RFC that Plaintiff could perform medium work, and this position was less physically demanding than medium work, the ALJ concluded that Plaintiff was able to perform her past relevant work as a delivery driver. (*Id.* at 35). The ALJ proceeded to step five in order to provide an alternative basis for denying Plaintiff's applications, indicating that there were other jobs in the national economy that

---

[1] Plaintiff worked for a cigarette company for a brief period in 2008, during which time she earned $3,800. (A.R. 57).

Plaintiff would be able to perform. (*See id.*). Accordingly, the ALJ determined that Plaintiff was not "disabled" for social security purposes. (*Id.* at 36).

Plaintiff appealed this decision, and on April 10, 2012, the Social Security Appeals Council upheld the ALJ's decision without a hearing, rendering the ALJ's August 16, 2010, decision denying Plaintiff benefits the final decision of the Commissioner. (*See* A.R. 1). On June 5, 2012, Plaintiff filed this Complaint, contending that the ALJ's decision was not supported by substantial evidence. (*See* R. 2). Plaintiff filed a Motion for Summary Judgment on October 9, 2012 (R. 14). The Commissioner also filed a Motion for Summary Judgment on November 6, 2012. (R. 15). The matter is now ripe for review and preparation of a Report and Recommendation.

### III. ANALYSIS

The crux of Plaintiff's argument is that the ALJ should have taken into account the moderate limitations from Section I of the Mental Residual Functional Capacity Assessment (A.R. 326-29), that is, evidence that was allegedly contrary to the ALJ's determination regarding Plaintiff's ability to perform mental work-related activities. (*See* R. 14-1, at 9). According to Plaintiff, the Section I moderate limitations adversely affect Plaintiff's employability. (*See id.* at 9-10). The ALJ, however, did not discuss these limitations or provide reasons why the limitations were given no weight in the administrative opinion. (*Id.* at 10). And, argues Plaintiff, the ALJ should have considered her counsel's hypothetical to the VE which was based upon those limitations; instead, the ALJ rejected the testimony and the hypothetical. (*Id.*). For the reasons that follow, this argument is unconvincing.

    **A.    The ALJ was not required to consider Section I of the Mental Residual Functional Capacity Assessment; therefore the Section III conclusions amount to substantial evidence in support of the ALJ's RFC determination.**

Plaintiff notes that the ALJ's opinion used mental work limitations from Section III in Exhibit 7F (Mental Residual Functional Capacity Assessment) (A.R. 326-29), a document completed by Dr. Ross, a state psychological consultant. Plaintiff states that since the ALJ used the information in one section of this document (Section III) in determining the RFC, the ALJ was also obliged to consider the Section I moderate limitations in the RFC. The ALJ was not, however, required to consider the Section I limitations because according to the Commissioner's Program Operations Manual System (POMS), "**Section I is merely a worksheet** to aid in deciding the presence and degree of functional limitations and the adequacy of documentation and **does not constitute the RFC assessment**." *See* SSA, DI24510.060 Mental Residual Functional Capacity Assessment (May 1999) (emphasis in original), *available at* https://secure.ssa.gov/apps10/poms.nsf/lnx/0424510060. The POMS also states that Section III ("Functional Capacity Assessment") "is for recording the mental RFC determination. It is in this section that the **actual mental RFC assessment is recorded,** explaining the conclusions indicated in [S]ection I, in terms of the extent to which these mental capacities or functions could or could not be performed in work settings." *Id.* (emphasis in original). Since Section I is explicitly intended by the Commissioner to be used merely as a worksheet for the completion of Section III's Functional Capacity Assessment, it does not follow that the ALJ was required to consider Section I in determining the RFC.

While the POMS is not a statute, a reviewing court should accord deference to an agency's interpretation of its own administrative materials. *See Barnhart v. Thomas*, 540 U.S. 20, 26-30 (2003) (noting that "when a statute speaks clearly to the issue at hand we 'must give effect to the unambiguously expressed intent of Congress,' but when the statute is 'silent or ambiguous' we must defer to a reasonable construction by the agency charged with its implementation" (quoting *Chevron,*

*U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 843 (1984))). Accordingly, the ALJ was not required to include Section I's summary conclusions in the RFC because the ALJ reasonably interpreted the POMS language.

Even if the ALJ were required to include the Section I information in the RFC, the ALJ's decision was not in error because Section III addressed Section I's moderate limitations. Section I contains the following moderate limitations:

- "the ability to maintain attention and concentration for extended periods";

- "the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances"; and

- "the ability to interact appropriately with the general public."

(*See* A.R. 326-27). Section III—which the ALJ used to create the RFC—covered each of these areas:

> On balance, [Plaintiff] retains the basic mental skills, independent of any physical limits, to acceptably:
>
> A    Understand and recall simple and some detailed work procedures and instructions, maintaining attention for two hour periods across a normal workday
>
> B    Complete routine mental aspects, making associated work-related decisions, without special supervision, following a regular schedule
>
> C    Tolerate coworkers and accept supervision in an object focused context with infrequent and casual contacts
>
> D    Adapt to gradual change and appreciate work hazards on the job described[.]

(A.R. 328) (formatting in original). Another state agency psychological consultant, Dr. Perritt, agreed with these findings. (*See* A.R. 397-99). These two opinions amount to substantial evidence supporting the ALJ's RFC determination.

**B.      The ALJ did not err in his questioning of the vocational expert.**

After the ALJ determined the RFC, he looked to whether Plaintiff was capable of returning to her past work through eliciting the VE's testimony. The VE testified that Plaintiff had engaged in past employment that ranged from light to medium.[2] The ALJ then posed the following hypothetical to the VE:

> All right, for purposes of the first hypothetical, I'm going to ask you to assume someone of Ms. Seymour's age, education, and work experience. I'm going to ask you to assume that this person is limited to medium work, as it's defined in the Regulations and Rulings, that involves no ladder, rope or scaffold climbing. The person should avoid concentrated exposure to extreme heat and humidity and hazards, and from a mental standpoint, I'm going to ask you to assume that this person is able to understand, recall simple and some detailed work procedures and instructions, maintain attention for two-hour periods across a normal workday, complete routine mental aspects without special supervision within a regular schedule, tolerate co-workers and accept criticism in an object focus context with infrequent and casual contact, and adapt to gradual change and appreciate work hazards on the job. Based on those limitations, would this person be able to perform any of Ms. Seymour's past work?

(A.R. 65). The VE answered that yes, Plaintiff would be able to work as a food delivery driver, noting that, "In terms of the pace of the day, the public contact is [with a] one-on-one individual situation, and it is spaced out through the course of the day." (*Id.*). The VE also testified that Plaintiff was capable of working at several other occupations: product packager; production worker; office cleaner or hotel/motel cleaner; laundry worker; unskilled clerical work; and machine monitor. (*Id.* at 66).

---

[2]Plaintiff's work at the cigarette outlet was classified as light and semi-skilled; her work as a home health aide was medium and also semi-skilled (although the VE noted that the claim file's description of her work suggested that the position was more in the heavy category of work); the delivery driver position was light and unskilled; and her work as a nursing assistant at a nursing home was classified as medium and semi-skilled (although again, the VE noted that this sort of work was in practice more in the heavy category). (A.R. 64-65).

8

The ALJ then asked the VE to do the following: "assume the full credibility of the allegations to which Plaintiff has testified today, including her testimony with regard to the need to alter position, the interference with respect to panic attacks and migraine, would this person be able to perform her past work or any other work?" (A.R. 67). The VE stated that if these allegations were assumed, "all work would be precluded, [both] past [positions] and the positions I have mentioned in testimony." (*Id.*).

Next, Plaintiff's counsel posed several hypotheticals to the VE. (*See* A.R. 67-70). Starting with the mental workabilities in the ALJ's first hypothetical, counsel asked the VE to assume that Plaintiff "would have a significant limitation that prevented her from one-thirds to two-thirds of the normal workday in being able to perform activities within a schedule or maintain regular attendance and be punctual within customary tolerances." (*Id.* at 67-68). The VE testified that this limitation would prevent such a person from being able to maintain competitive employment. (*Id.* at 68).

Then, Plaintiff's counsel asked the VE to consider an alternative scenario, again using the ALJ's first hypothetical as a starting point. (*See* A.R. 68). Counsel asked the VE to assume that Plaintiff was unable do a "good deal of walking" at work, was only occasionally able to use her arms and hands overhead, and was incapable of performing a job that required her to use her hands to grasp or grip more than occasionally. (*Id.*). The VE said that under this scenario, it was impossible for the person to perform or sustain work. (*Id.* at 69).

Lastly, counsel added mental factors to the ALJ's first hypothetical. (*See* A.R. 69). Counsel asked the VE what would be the work-based ramifications for a person who suffered from panic attacks two to three times per week (rendering her unable to perform work for between fifteen minutes and an hour), and whose medication made her drowsy on a daily basis. (*Id.*). The VE was

9

unable to address the drowsiness factor but was able to determine that the panic attacks would preclude Plaintiff from all work. (*Id.* at 69-70).

The ALJ's questions included all of Plaintiff's RFC limitations. As discussed above, the ALJ was not required to consider the Section I moderate limitations in determining the RFC, nor was he required to include those limitations in his questions to the VE. Therefore, the ALJ's questions were proper.

### C. The ALJ's determination was supported by substantial evidence.

The ALJ utilized the VE's testimony in concluding that Plaintiff was not disabled. The ALJ's hypothetical incorporated all of Plaintiff's limitations, including those listed in Section III by Drs. Ross and Perritt. As noted above, the ALJ was not required to consider Section I's moderate limitations, and therefore the ALJ properly disregarded Plaintiff's counsel's hypotheticals which used those Section I limitations. Accordingly, the ALJ's decision was based on substantial evidence.

At step three, the ALJ determined the following. First, there was no evidence of sufficient musculoskeletal impairment, such as nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis resulting in pseudoclaudication. (A.R. 31). Second, Plaintiff had not satisfied the Federal Regulation pertaining to an impaired respiratory system. (*Id.*). Third, Plaintiff was not mentally impaired, considering several criteria: restriction of activities of daily living; difficulties in maintaining social functioning; difficulties in maintaining concentration, persistence, or pace; and repeated episodes of decompensation,[3] each of an extended duration. (*Id.*). The ALJ noted that the

---

[3]That is, "repeated failure to adapt to stressful circumstances which cause the individual either to withdraw from that situation or to experience an increase of signs and symptoms with an accompanying difficulty in maintaining activities of concentration and task persistence." (A.R. 32).

required level of impairment for these categories is "marked," meaning "more than moderate but less than extreme." (*Id.*). On this third subtopic, the ALJ made the following findings:

- Plaintiff had mild restrictions on her daily living activities, and was capable of taking care of her personal needs, and doing light housework, driving, counting money, and going shopping;

- Plaintiff had moderate difficulties with social functioning, tending not to associate with people outside of her family. The ALJ noted, however, that Plaintiff was capable of getting along with people outside of her family group;

- Plaintiff had moderate difficulties regarding concentration, persistence, and pace. The ALJ discounted these difficulties, however, saying that Plaintiff admitted to reading and watching television a significant amount of time; and

- There was no evidence that Plaintiff had experienced instances of deterioration or decompensation in work or work-like settings.

(*Id.* at 31-32). The ALJ, upon consideration of these findings, decided that Plaintiff's mental impairments did not "cause at least two 'marked' limitations or one 'marked' limitation and 'repeated' episodes of decompensation, each of extended duration." (*Id.* at 32). Therefore, the requirements for disability were not satisfied. (*Id.*). The ALJ also examined

> whether [Plaintiff's] mental illness is currently attenuated by medication or therapy but nevertheless had caused repeated episodes of decompensation of extended duration, inability to adjust to even minimal workplace changes due to residual disease process, or inability to function outside a highly supportive living arrangement for at least one year; or causes complete inability to function independently outside the area of one's home.

(*Id.*). The ALJ decided that Plaintiff had not provided evidence to support such a claim. Before turning to step four, the ALJ noted that he had also taken Plaintiff's obesity into account in evaluating Plaintiff's impairments. (*Id.*).

At step four, the ALJ determined that Plaintiff was capable of performing medium work, but noted that Plaintiff could not climb ladders, ropes, or scaffolds, and needed to avoid concentrated

11

exposure to extreme heat, humidity, and hazards. (A.R. 33). Furthermore, Plaintiff was able to understand and recall simple and some detailed work procedures and instructions, and could focus her attention for two-hour periods over the course of a normal workday. She could also "complete routine mental aspects without special supervision within a regular schedule; tolerate co-workers and accept supervision in an object-focused context with infrequent and casual contact; and adapt to gradual change and appreciate work hazards on the job." (*Id.*). The ALJ notes that he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. (*Id.*).

Since the Plaintiff's symptoms included mental impairment, the ALJ considered whether there were underlying medically determinable physical or mental impairments, and if so, the impairments' intensity, persistence, and limiting effects upon Plaintiff's functioning. (A.R. 33). This analysis required the ALJ to make a finding as to the credibility of the statements used by Plaintiff in support of her argument by examining the entire case record. (*Id.*). The ALJ completed this sort of comprehensive analysis and determined that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms. (*See* A.R. 33-34). But, the ALJ said, Plaintiff's statements regarding the intensity, persistence, and limiting effects of the alleged symptoms were not credible to the extent that they conflicted with the ALJ's RFC. (*Id.* at 34).

The ALJ said that Plaintiff's testimony regarding the degree of limitations was not supported by the weight of the evidence, considering the record as a whole. (*Id.* at 34-35). This record included information from the consultative examiners Drs. Caudill and Beard, state agency medical consultants who stated that Plaintiff was capable of performing medium work (subject to the above-

listed limitations), and the state agency pscyhological consultants who provided guidance as to Plaintiff's mental limitations in the workplace. (*Id.* at 35). The ALJ determined that these assessments were consistent with the weight of the evidence of record and adopted their limitations into the RFC. (*Id.*).

At step five, as an alternative basis for denying Plaintiff's disability claim, the ALJ determined that there were other jobs in the workforce which Plaintiff was capable of performing. In making this assertion, the ALJ took into account Plaintiff's age, education, work experience, and RFC, along with the Medical-Vocational Guidelines found at 20 C.F.R. pt. 404, subpt. P, app'x 2, and the testimony of the VE at the hearing. (*See id.* at 35-36). The VE testified that there were indeed jobs for which Plaintiff was physically and mentally qualified, including product packager, production worker, office cleaner, laundry worker, unskilled clerical worker, and machine monitor. (*Id.* at 36). These jobs respectively included medium, light, and sedentary work.

Plaintiff's counsel posed a hypothetical to the VE in which, in addition to the limitations that were initially posed to the VE, Plaintiff also had a mental limitation that "prevented her from one-third to two-thirds of the normal workday in being able to perform activities within a schedule or maintain regular attendance and be punctual within customary tolerances." (A.R. 68). As Plaintiff notes in her Motion (R. 14-1, at 10), the ALJ in his determination mistakenly described this hypothetical as whether Plaintiff was prevented "from *maintaining attention* for one-third to two-thirds of the normal workday" (A.R. 36) (emphasis added). This misstatement is harmless error because Plaintiff's hypothetical was based on the Section I limitations, and as discussed above, the ALJ was not required to consider those limitations. The ALJ rejected Plaintiff's hypothetical because he felt that the additional limitations were not creditable, given the entire record. (*Id.*). The

13

ALJ noted that this decision was made "[b]ecause the [ALJ] did not find the claimant's subjective allegations fully credible . . . [and therefore] did not accept the vocational expert's response to a hypothetical question that asked [the VE] to assume their full credibility." (*Id.*). As a result of the VE's testimony in response to the first hypothetical, the ALJ determined that Plaintiff was capable of pursuing work in one of various medium through sedentary employment positions, and that therefore Plaintiff was "not disabled" for SSA purposes. (*Id.*).

In sum, the ALJ's determination was supported by substantial evidence because he took into consideration all of the Plaintiff's relevant, credible mental and physical limitations. It is therefore **recommended** that the decision of the Commissioner be **affirmed.**

IV. **CONCLUSION AND RECOMMENDATION**

As explained above, the ALJ's decision is supported by substantial evidence and should be affirmed. Accordingly, **IT IS RECOMMENDED** that:

1. The Commissioner's decision be found to be supported by substantial evidence and therefore **AFFIRMED;**

2. Plaintiff's Motion for Summary Judgment (R. 14) be **DENIED;**

3. Defendant's Motion for Summary Judgment (R. 15) be **GRANTED;** and,

4. This matter be **STRICKEN** from the active docket of the Court.

Specific objections to this Report and Recommendation must be filed within fourteen (14) days of the date of service or further appeal is waived. 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 728 F.2d 813, 815 (6th Cir.), *aff'd*, 474 U.S. 140 (1985). A party may file a response to another party's objections within fourteen (14) days after being served with a copy thereof. Fed. R. Civ. P. 72(b).

Dated this 22nd day of January, 2013.



Signed By:
*Candace J. Smith*
United States Magistrate Judge

G:\DATA\social security\12-52 Seymour R&R final.wpd